#27093-aff & rem-JMK

**2015 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

JOHN THOMAS WHITFIELD, JR.,                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRADLEY G. ZELL
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

BETHANY L. ERICKSON
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                        and appellee.

KATHERYN L. DUNN
Office of the Minnehaha
 County Public Defender
Sioux Falls, South Dakota                     Attorneys for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015

OPINION FILED **04/01/15**

#27093

KERN, Justice

[¶1.]        After intercepting a package with 37 grams of cocaine hidden in a doll, the State arrested and charged defendant with Count 1: possession of a controlled substance with intent to distribute, Count 2: possession of a controlled substance, Count 3: possession of marijuana, and Count 4: possession of drug paraphernalia. At defendant's jury trial, the circuit court admitted two text messages sent to defendant's phone, which suggested that the sender wanted to obtain cocaine from defendant. At the close of the evidentiary portion of the trial, defendant moved for a judgment of acquittal, and the court granted the motion with respect to Count 1. However, the dismissed Count 1 was listed in the final jury verdict form included with the instructions, and the jury found defendant guilty of that charge. The jury also convicted defendant of Count 2: possession of a controlled substance and Count 4: possession of drug paraphernalia. The jury acquitted defendant of Count 3: possession of marijuana. The court imposed a penitentiary sentence for Count 2, after finding grounds to depart from a presumptive sentence of probation under SDCL 22-6-11. Defendant appeals. We affirm the circuit court and remand with instructions to enter an amended judgment.

## BACKGROUND

[¶2.]        On August 3, 2013, after receiving a tip that a package containing illegal drugs would be delivered to Sioux Falls from Texas, Agent Michael Hockett with the Sioux Falls Area Drug Task Force intercepted the package and brought it to the law enforcement center. Agent Hockett obtained a warrant to search the package, which was addressed to a "James Miguel" at the Brimark Inn, Sioux Falls,

South Dakota.  The detectives opened the package and found a large pink-headed doll (known as Lalaloopsy), a birthday card, markers, and a black garbage bag.  The head of the Lalaloopsy doll had a pouch closed by a zipper.  In the pouch, the detectives uncovered 37 grams of cocaine, which was packaged with a California Scent car air freshener canister.

[¶3.]        Agent Hockett and Detective Nick Cook set up a controlled delivery of the package to the front desk of the Brimark Inn.  Louis Deak arrived at the Inn by taxi and attempted to pick up the package, after which law enforcement took him into custody.  Agent Hockett and Detective Cook questioned Deak, who told them he was a worker at the carnival stationed at the fair grounds and that his supervisor, "Big John," had purchased a taxi for him and sent him to pick up a package on his behalf.  Deak told the officers they could find Big John at the fairgrounds in a blue NAPA trailer truck.

[¶4.]        Detectives Flogstad, Dan Christiansen, Terrance Matia, and John Spaeth located Big John at the fairgrounds, who was later identified as John Whitfield.  Whitfield gave them consent to search his living quarters, which were in the NAPA truck.  In the area of the truck where Whitfield resided the detectives found a cocaine pipe inside a black toiletry bag, a smokeless tobacco container with a small amount of marijuana inside, a clear film canister containing cocaine residue, a Lalaloopsy doll, and a California Scent air freshener canister also containing cocaine residue.  Whitfield had also given the detectives consent to search his cell phone.  His call history showed an outgoing call to the taxi company that Deak used to pick up the package.  The detectives also retrieved two text

messages on the cell phone from an individual identified in Whitfield's contact list as "JKenny." The first message was sent to Whitfield's phone on July 29, 2013, stating, "U still holding?" The second message was sent on July 31, 2013, and stated, "Hey, u have any choi?" Whitfield admitted to the detectives that he sent Deak to pick up the package addressed to James Miguel. He denied any knowledge of the drugs in the package or the drugs found in his area of the truck.

[¶5.] The State charged Whitfield with Count 1: possession of a controlled substance with intent to distribute in violation of SDCL 22-42-2, Count 2: possession of a controlled substance in violation of SDCL 22-42-5, Count 3: possession of marijuana in violation of SDCL 22-42-6, and Count 4: possession of drug paraphernalia in violation of SDCL 22-42A-3. The State also filed a part II information alleging Whitfield was a habitual offender under SDCL 22-7-7.

[¶6.] A jury trial was held January 13-14, 2014. During the trial, the State sought to admit the two text messages from JKenny through the testimony of Detective Flogstad. The State offered the messages to show Whitfield's knowledge of cocaine and his course of conduct based on the fact that the messages were sent a few days prior to the delivery of the package and not to prove the truth of the matter asserted in the text messages. The court inquired of the State, "To what extent do they establish knowledge by this defendant, I think you said, of cocaine?" The State explained that Detective Flogstad would testify that based on his training and experience "choi" is known to be a code word for cocaine and the message "u still holding?" refers to cocaine and dealing cocaine. Whitfield objected to the admission of the statements asserting that the messages were inadmissible hearsay

and irrelevant. Whitfield contended that the statements were hearsay because they were offered to prove that somebody was asking Whitfield for cocaine, which went to the truth of the matter asserted. Whitfield further argued that the statements were not relevant because they could not be attributed to him specifically and were offered without the context in which they were sent. The court ruled that the messages were relevant and not hearsay and, therefore, admissible. The court found the messages were "being offered for knowledge as to possession of the phone and that there's at least drug-related nature of communication on that phone" and "not necessarily that there was or was not cocaine and not the truth of that matter[.]"

[¶7.] At the close of the State's case, Whitfield moved for a judgment of acquittal on all charges. The court denied Whitfield's motion as it related to Counts 2 through 4, but took Whitfield's motion under advisement as it related to Count 1: possession of a controlled substance with intent to distribute. After both sides had rested, the court reconsidered Whitfield's motion for a judgment of acquittal on Count 1. Aside from the large amount of cocaine found in the doll, the court found that there was no evidence, circumstantial or otherwise, to support the inference that Whitfield possessed the cocaine with the intent to distribute it. The court specifically remarked that it was not considering the text messages as evidence that Whitfield intended to distribute the cocaine, because the messages were not admitted to prove the truth of the matter asserted—that JKenny wanted cocaine from Whitfield. Because the jury would have to speculate regarding Whitfield's

intent, the court granted his motion for a judgment of acquittal on Count 1. The court modified the jury instructions accordingly.

[¶8.]    The jury, however, inadvertently received the original verdict form that contained Count 1 rather than a revised form without Count 1. The jury returned a verdict finding Whitfield guilty of Count 1, Count 2, and Count 4 and not guilty of Count 3: possession of marijuana. The court struck the jury's finding of guilt on Count 1. After the jury was dismissed, the court informed the parties that the jury did not have instructions relevant to Count 1 and asked the parties whether either would like to make a record on the incorrect verdict form. Both parties declined. The court later dismissed the part II information and sentenced Whitfield on Count 2: possession of a controlled substance to five years in the penitentiary with two years suspended and to 30 days for Count 4: possession of drug paraphernalia.

[¶9.]    Pursuant to SDCL 22-6-11, Whitfield is entitled to a probationary sentence unless the court finds that the presence of aggravating factors justify a departure. The circuit court denied Whitfield presumptive probation "based upon looking at your prior criminal convictions, the amount of substance found to be in your possession, [and] your nonconducive nature to probation." The court found particularly relevant the fact that this was Whitfield's fourth felony conviction, with prior convictions for the manufacture, delivery, or possession of a controlled substance, criminal trespass, and theft of property. The court further considered that Whitfield had a number of parole violations in Texas and that he would be

difficult to supervise because he had a transient lifestyle, was employed as a carnival worker, and moved from state to state.

[¶10.]     Whitfield appeals asserting (1) the court abused its discretion when it admitted the two text messages from JKenny, (2) the improper verdict form tainted the jury's deliberations and verdict and prejudiced Whitfield, and (3) the court erred by finding aggravating circumstances justified a departure from the probationary sentence mandated by SDCL 22-6-11.

## STANDARD OF REVIEW

[¶11.]     We review a court's evidentiary rulings for an abuse of discretion, and if error is found, we will not overturn the court's evidentiary ruling unless the error is prejudicial. *State v. Harris*, 2010 S.D. 75, ¶ 8, 789 N.W.2d 303, 307 (citing *State v. Boston*, 2003 S.D. 71, ¶ 14, 665 N.W.2d 100, 105). "The construction of [a] statute and its application to [the] facts present questions of law, which we review de novo." *State v. Springer-Ertl*, 1997 S.D. 128, ¶ 4, 570 N.W.2d 39, 40 (citation omitted). "We generally review a sentence within the statutory maximum under the abuse of discretion standard of review." *State v. Overbey*, 2010 S.D. 78, ¶ 13, 790 N.W.2d 35, 40 (citing *State v. Blair*, 2006 S.D. 75, ¶ 20, 721 N.W.2d 55, 61).

## ANALYSIS

### 1. Text Messages

[¶12.]     Whitfield argues that the two text messages from JKenny were inadmissible hearsay and the admission of the messages prejudiced him. The messages were hearsay, Whitfield contends, because they could only by used to prove the truth of the matters asserted in them, specifically that JKenny twice

asked Whitfield for cocaine. The State, however, submits that the messages were used to show that Whitfield had drug-related messages on his phone days prior to the incident, which was relevant to prove Whitfield's knowledge of the drugs in his possession and the pending shipment.

[¶13.] To constitute hearsay, the statement must be an out-of-court assertion "offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(a) to (c)). However, a statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted. *State v. Graham*, 2012 S.D. 42, ¶ 28, 815 N.W.2d 293, 305. Here, the court ruled that the text messages were not hearsay, because they were not admitted to prove that JKenny was interested in obtaining cocaine from Whitfield, but that Whitfield had knowledge of the cocaine in his possession based on the fact that his phone received two drug-related messages close to the date of the charged offenses.

[¶14.] We presume the court's evidentiary ruling is correct and will not overturn this ruling absent an abuse of discretion. *Harris*, 2010 S.D. 75, ¶ 8, 789 N.W.2d at 307. Based on our review of the court's decision, it did not abuse its discretion when it admitted the statements as evidence that Whitfield had knowledge of the shipment of drugs and the drugs in his possession. *See, e.g., State v. Charger*, 2000 S.D. 70, ¶ 21, 611 N.W.2d 221, 225. The circuit court clearly stated that the text messages were not admitted to prove the truth of the matters asserted. In fact, when the court granted Whitfield a judgment of acquittal on the charge of possession of a controlled substance with intent to distribute, the court

refused to consider the text messages from JKenny as evidence that Whitfield intended to distribute cocaine.

### 2. Incorrect Verdict Form

[¶15.] It is undisputed that the court gave the jury a verdict form that asked the jury to fill in the blank on whether Whitfield was guilty or not guilty of Count 1: possession of a controlled substance with intent to distribute. It is further undisputed that Whitfield did not preserve this error for our review. Nonetheless, Whitfield asks this Court to invoke its discretion under plain error review, as he alleges the court's error affected his substantial rights and the fairness and integrity of the judicial system. In particular, Whitfield claims that because the jury found him guilty of the dismissed charge, the jury departed from its "duty to follow instructions and uphold the law as provided by the trial court." In response, the State highlights that the jury was given correct instructions and that no evidence presented at trial related solely to the acquitted charge. The State further emphasizes that Whitfield was not prejudiced by the incorrect verdict form, because he received a fair and impartial trial and there is ample evidence to support the jury's verdict.

[¶16.] When plain error affects a defendant's substantial rights, the error may be considered by this Court although the error was not brought to the attention of the circuit court. SDCL 23A-44-15 (Rule 52(b)). Plain error occurs when there is an "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *State v. Nelson*, 1998 S.D.

124, ¶ 8, 587 N.W.2d 439, 443 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). As the party asserting plain error, Whitfield bears the burden of showing the error was prejudicial. *See id.* ¶ 7.

[¶17.] Based on our review of the record, the court's incorrect verdict form did not affect Whitfield's substantial rights or the outcome of the trial. *See State v. Beck*, 2010 S.D. 52, ¶ 17, 785 N.W.2d 288, 294 (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429, 173 L. Ed. 2d 266 (2009)). The jury received proper instructions, despite the incorrect verdict form, and the evidence presented at trial was not unique to the dismissed charged. The parties did not argue or refer to the existence of Count 1 during closing arguments as it had been dismissed by the court. Moreover, there is overwhelming evidence in favor of Whitfield's guilt of Count 2: possession of a controlled substance and Count 4: possession of drug paraphernalia—namely the 37 grams of cocaine found in the doll in the package to be picked up for Whitfield and the cocaine pipe and film canister with cocaine residue found during the search of Whitfield's area in the NAPA truck. Because the court's error does not constitute plain error, we decline to exercise our discretion to consider the error.

### 3. Presumptive Probation Requirement under SDCL 22-6-11

[¶18.] Whitfield contends he is entitled to a new trial because the circuit court erred when it failed to state in the dispositional order the aggravating circumstances justifying its departure from a sentence of probation. The State concedes that the aggravating circumstances were not set forth in the dispositional order. However, it asks this Court to affirm based on the doctrine of substantial

compliance, which "'means actual compliance in respect to the substance essential to every reasonable objective of the statute.'" *See State v. Bunnell*, 324 N.W.2d 418, 420 (S.D. 1982) (quoting *Smith v. State*, 364 So. 2d 1, 9 (Ala. Crim. App. 1978)). The State submits that the court complied with the substance essential to every reasonable objective of SDCL 22-6-11, because the sentencing court acknowledged Whitfield's eligibility for probation, found that the presence of aggravating circumstances justified a departure, and clearly stated those circumstances on the record.

[¶19.]     SDCL 22-6-11, which was enacted in 2013, provides that:

> The sentencing court shall sentence an offender convicted of a Class 5 or Class 6 felony . . . to a term of probation. The sentencing court may impose a sentence other than probation if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation under this section. If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and *the same shall be stated in the dispositional order*. Neither this section nor its application may be the basis for establishing a constitutionally protected liberty, property, or due process interest.

(Emphasis added.) The statute is clear: a defendant is entitled to a sentence of probation upon a conviction for certain crimes *unless* "the court finds aggravating circumstances exist that pose a significant risk to the public[.]" *See id.* Moreover, SDCL 22-6-11 directs that "the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order." *Id.*

[¶20.]     Here, the court recognized that SDCL 22-6-11 applies to Whitfield, identified the aggravating circumstances that pose a significant risk to the public,

and stated those circumstances on the record at sentencing. The court did not, however, include those circumstances in the dispositional order and, therefore, clearly erred. This error, however, does not warrant either a new trial or resentencing. Rather, the matter is remanded to the sentencing court to amend the dispositional order to include the aggravating circumstances considered on the record at the time of the sentencing hearing.

[¶21.]     Whitfield also asserts that the aggravating circumstances identified by the court "do not amount to a significant risk to public safety that would justify departure from a probation sentence." He further contends it was an abuse of discretion for the court to consider, when it sentenced him to five years, that he "already probably received a number of breaks," because of the judgment of acquittal and dismissal of the part II information. The State, however, argues that the court properly considered Whitfield's history and that the record supports its decision to impose a penitentiary sentence.

[¶22.]     In denying Whitfield a sentence of presumptive probation, the court considered Whitfield's three prior felonies, which included a prior drug offense. The court deemed Whitfield, age 56, a poor candidate for probation. He had a history of parole violations in Texas and would be difficult to supervise in light of his desire to return to Texas and continue employment as a transient carnival worker. Lastly, the court considered the amount of cocaine found in Whitfield's possession. The court considered all these factors and that Whitfield had "already probably received a number of breaks if you want to call it that" when it sentenced Whitfield to five years with two years suspended.

[¶23.] To impose an appropriate sentence a "court should 'acquire a thorough acquaintance with the character and history of the man before it.' This study should examine a defendant's 'general moral character, mentality, habits social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'" *State v. Lemley*, 1996 S.D. 91 ¶ 12, 552 N.W.2d 409, 412 (quoting *State v. Chase in Winter*, 534 N.W.2d 350, 354-55 (S.D. 1995)). To depart from a sentence of probation, the court must identify aggravating factors that pose a significant risk to the public. SDCL 22-6-11. Based on our review of the record and the court's reasons for departing from a sentence of probation, we cannot say the court abused its discretion. *See State v. Hernandez*, 2014 S.D. 16, ¶ 12, 845 N.W.2d 21, 23. Whitfield poses a significant risk to the public. It is unlikely he would be compliant on probation and it is likely he would again possess a controlled substance. Moreover, the court did not abuse its discretion when it imposed a sentence of five years with two years suspended based on those same circumstances and Whitfield's age, background, and the charges Whitfield originally faced, which included Count 1 and the part II information.

[¶24.] The convictions are affirmed in all respects, but the matter is remanded to the sentencing court to amend the dispositional order to include the aggravating circumstances considered on the record at the time of the sentencing hearing as required by SDCL 22-6-11.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.