#28435-aff in pt & rev in pt-MES
**2019 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

RICHARD KEITH ROEDDER,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


WILLIAM D. GERDES
Aberdeen, South Dakota                    Attorney for defendant and
                                          appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2018
OPINION FILED **01/30/19**

#28435

SALTER, Justice

[¶1.] Richard Roedder received an enhanced forty-year prison sentence after pleading guilty to a charge of unauthorized possession of a controlled substance and admitting to five prior felony convictions listed in a part II habitual offender information. Roedder challenges his conviction, claiming his guilty plea was not supported by an adequate factual basis. He also argues the circuit court erred when it relied upon his five prior felony convictions to enhance his sentence and impose a forty-year sentence rather than the presumptive sentence Roedder sought. Roedder further claims the court's sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. We affirm Roedder's conviction but reverse his sentence and remand for resentencing.

## Background

[¶2.] On August 24, 2017, Aberdeen police officers responded to a call from a resident who reported screaming and crying in a nearby apartment. Once there, officers found Roedder and Nashay Wurtz. Roedder was on parole for a 2011 distribution of a controlled substance conviction. Wurtz was also on parole and was taken into custody when police officers learned she had been drinking alcohol in violation of her supervision conditions.

[¶3.] Before Wurtz was transported to the Brown County Jail, a police officer accompanied her into the apartment so that she could retrieve some property. Inside the apartment, the officer noticed a hollowed-out pen tube lying on a dining room table. The officer recognized it as a device used to ingest narcotics,

and an inspection of the tube revealed the presence of small white crystal flakes that field tested positive for methamphetamine.

[¶4.] Officers obtained a search warrant for the apartment and a vehicle parked nearby registered to Roedder. A search of the apartment yielded methamphetamine residue near the location of the hollowed-out pen and approximately twenty-two grams of methamphetamine in a packaged baggy inside a golden balloon. While searching Roedder's vehicle, officers discovered a bag of golden balloons similar to the one found filled with methamphetamine in the apartment. Roedder later admitted to methamphetamine use, which was confirmed by a urinalysis test administered pursuant to the search warrant.

[¶5.] Roedder was indicted and charged in a series of superseding indictments with the following drug-related offenses: (1) possession with intent to distribute a controlled drug or substance in violation of SDCL 22-42-2; (2) conspiracy to distribute a controlled drug or substance in violation of SDCL 22-3-8 and 22-42-2; (3) unauthorized possession of a controlled substance in violation of SDCL 22-42-5; and (4) unauthorized ingestion of a controlled drug or substance in violation of SDCL 22-42-5.1.

[¶6.] The State also filed an amended part II information, alleging Roedder was a habitual offender and listing five prior felony convictions. Included were a 2000 Arizona conviction for conspiracy to commit armed robbery, along with four 2011 convictions for drug-related offenses in Brown County. The part II information listed the same date for all four Brown County convictions. Roedder challenged the part II information, arguing the four Brown County convictions

arose out of the same transaction and therefore could only be counted as a single prior conviction for enhancement purposes. He also claimed the Arizona conspiracy conviction did not constitute a felony in South Dakota, citing differences in the two states' conspiracy statutes. The circuit court rejected Roedder's arguments; deemed the Arizona conviction to be a crime of violence; and determined that Roedder's enhanced maximum potential punishment, if convicted, was the equivalent of a Class C felony, or life imprisonment.[1]

[¶7.]  On September 5, 2017, Roedder pled guilty to unauthorized possession of a controlled substance in violation of SDCL 22-42-5, without the benefit of a plea agreement. He also admitted to the allegations contained in the part II information, despite still disputing the ability of the circuit court to use the convictions to enhance his sentence.

[¶8.]  During the change of plea hearing, the circuit court advised Roedder that he could receive a sentence of up to life in prison for the possession of controlled substance offense. Roedder acknowledged the risk and continued with his plan to waive his rights and plead guilty. The court elicited a factual basis statement from the prosecutor with which Roedder agreed, adding only that he possessed "a small amount of methamphetamine[,]" not the twenty-two-gram amount described by the prosecutor. Roedder did not challenge any of the circuit court's findings regarding the sufficiency of the guilty plea and indicated he would not request a presentence investigation.

---

1.  *See* SDCL 22-7-8 (authorizing sentencing enhancement for offenders with three or more prior felonies, including a crime of violence); *see also* SDCL 22-1-2(9) (listing conspiracy to commit robbery as a crime of violence).

[¶9.] At Roedder's sentencing hearing, the circuit court imposed a forty-year prison sentence. Roedder was already being supervised on parole by the Department of Corrections and argued unsuccessfully for the imposition of a presumptive fully suspended penitentiary sentence for his Class 5 felony conviction. The State did not proceed with the other charges, and this appeal followed.

[¶10.] Roedder raises several issues which we restate as follows:

1. Whether the circuit court lacked a sufficient factual basis to accept his plea.

2. Whether the circuit court erred when it determined Roedder's enhanced statutory maximum sentence.

3. Whether the circuit court erred when it determined Roedder was ineligible for a presumptive fully suspended penitentiary sentence.

4. Whether the circuit court's decision to impose a forty-year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

## Standard of Review

[¶11.] The text of SDCL 23A-7-14 (Rule 11(f)) requires that a defendant's guilty plea be supported by a factual basis. We have previously suggested that our review of Rule 11(f) claims involves a de novo examination of the circuit court record. *See State v. Nachtigall*, 2007 S.D. 109, ¶ 5, 741 N.W.2d 216, 219 (explaining the factual basis for each element of the offense "must appear clearly on the record" (quoting *State v. Schultz*, 409 N.W.2d 655, 658 (S.D. 1987)).[2]

---

2. Roedder did not object to the circuit court's determination that his guilty plea was supported by a factual basis. Ordinarily, we would review a forfeited claim such as this for plain error. *See State v. Nelson*, 1998 S.D. 124, ¶ 7,

(continued . . .)

[¶12.]     Roedder's argument that his sentence was incorrectly enhanced turns on the interpretation and application of statutes which provide for the enhancement. His additional claims—that the circuit court was obligated to impose a presumptive sentence under SDCL 22-6-11 and erred by finding him ineligible— also involve questions of statutory interpretation. We review these legal issues de novo. *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166; *State v. Underwood*, 2017 S.D. 3, ¶ 5, 890 N.W.2d 240, 241.

[¶13.]     We also review de novo Roedder's claim that his sentence violated the Eighth Amendment. *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486.

**Analysis**

> 1.     *Whether the circuit court lacked a sufficient factual basis to accept Roedder's guilty plea.*

[¶14.]     Circuit courts may accept a guilty plea only after they are satisfied "there is a factual basis for the offense charged or to which the defendant pleads." SDCL 23A-7-14 (Rule 11(f)). In this regard, we have held:

> Before accepting a guilty plea, a court must be subjectively satisfied that a factual basis exists for the plea. The court must find a factual basis for each element of the offense. The factual basis must appear clearly on the record.

---

(. . . continued)
587 N.W.2d 439, 443 (stating this Court's inquiry is limited to plain error when no objection was made to the circuit court); *see also United States v. Christenson*, 653 F.3d 697, 699 (8th Cir. 2011) (defendant's argument that the district court accepted his guilty plea without an adequate factual basis is reviewed under the plain error doctrine in the absence of a timely objection). However, since neither party has identified plain error as the correct standard of review, we decline to apply it *sua sponte* in this case. *See State v. Mulligan*, 2007 S.D. 67, ¶ 25, 736 N.W.2d 808, 818 (refusing to apply plain error review in the absence of a party's request).

*Nachtigall*, 2007 S.D. 109, ¶ 5, 741 N.W.2d at 219 (quoting *Schulz*, 409 N.W.2d at 658). "[T]he factual basis may come from 'anything that appears on the record.'" *State v. Pentecost*, 2016 S.D. 84, ¶ 30, 887 N.W.2d 877, 885 (quoting *Nachtigall*, 2007 S.D. 109, ¶ 5, 741 N.W.2d at 219). "[R]eading the indictment to the defendant coupled with his admission of the acts described in it is a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admissions unequivocal." *State v. Olson*, 2012 S.D. 55, ¶ 42, 816 N.W.2d 830, 841 (quoting *Nachtigall*, 2007 S.D. 109, ¶ 5, 741 N.W.2d at 219).

[¶15.]    Here, the record easily supports a factual basis for Roedder's guilty plea to possession of a controlled substance. Under SDCL 22-42-5, a person is guilty of the offense when he knowingly possesses a drug that appears on the list of controlled substances without any authority to do so. Roedder agreed with the prosecutor's statement that he had possessed methamphetamine at an Aberdeen residence on August 24, 2016, offering only a clarifying comment regarding the amount of drugs he possessed:

> **[DEFENSE COUNSEL]:** Actually, we have no disagreement with that information. But as far as the actual possession, Mr. Roedder possessed a small amount of methamphetamine that had been supplied to him. But he admits that he did possess methamphetamine on August 24, 2016, in Brown County, South Dakota, and he possessed that methamphetamine illegally.
>
> **[THE COURT]:** Is that correct, Mr. Roedder?
>
> **[ROEDDER]:** Yes, sir.

[¶16.]    Roedder's argument challenging the factual basis for his guilty plea rests uneasily upon his unconnected claim that he cannot be found guilty under SDCL 22-42-5 because he ingested the methamphetamine and could only be found

guilty of SDCL 22-42-5.1. This argument is unsustainable for at least two perceptible reasons.

[¶17.]     First, Roedder unequivocally admitted to the circuit court that he, in fact, knowingly possessed methamphetamine. Indeed, his signed petition to plead guilty states in no uncertain terms that Roedder "will admit that he illegally possessed methamphetamine on August 24, 2016 in Brown County, South Dakota."

[¶18.]     Second, Roedder has long-since waived any separate argument that the circuit court erroneously allowed him to plead guilty to the wrong charge. *See State v. Andrews*, 2007 S.D. 29, ¶ 4, 730 N.W.2d 416, 418 ("It is 'the general rule that a voluntary and intelligent plea of guilty waives a defendant's right to appeal all nonjurisdictional defects in the prior proceedings.'" (quoting *State v. Hoeft*, 1999 S.D. 24, ¶ 12, 594 N.W.2d 323, 326)). With the benefit of counsel, Roedder unilaterally pled guilty to unauthorized possession of a controlled substance. Roedder's plea was not required as part of a plea agreement with the State, and it appears he simply opted for the unauthorized possession charge over the ingestion of a controlled substance charge. The circuit court determined the plea was the product of Roedder's own volition, without threats or coercion, and undertaken with a full understanding of the rights he was waiving and the maximum possible sentence of life in prison. Roedder does not challenge any of these findings, and under the circumstances, we conclude he has waived any argument that the circuit court could not have accepted his guilty plea.[3]

---

3.     Prior to the enactment of SDCL 22-42-5.1, we held that that a person could knowingly possess a controlled substance "by knowing physical possession or

(continued . . .)

2.   *Whether the circuit court erred when it determined Roedder's enhanced statutory maximum sentence.*

a.   *The 2011 Brown County Convictions*

[¶19.]   The Legislature has created a means by which the statutory maximum sentence for a felony conviction may be enhanced to varying degrees for offenders with previous felony convictions. *See* SDCL 22-7-7 to -8.1. In addition to restrictions on the age and type of prior convictions that may be used to enhance a sentence, the Legislature has provided that "only one prior conviction arising from the same transaction may be considered." SDCL 22-7-9.

[¶20.]   While there is no statutory definition of "same transaction," we have held that two or more acts are separate transactions when each act was distinct and completed before the next act began. *State v. Anderson*, 2005 S.D. 22, ¶ 33, 693 N.W.2d 675, 684. The fact that the acts all occurred at the same location, with the same parties, and were separated by relatively brief periods of time does not necessarily mean the acts were part of the same transaction. *See State v. Sieler*, 1996 S.D. 114, ¶¶ 17-19, 554 N.W.2d 477, 481-82 (holding that the defendant could be convicted of kidnapping, rape, burglary, murder, and aggravated assault as separate transactions even though the crimes all involved one victim, one location, and occurred over a three or four-hour period). Similarly, the plain fact that the acts were the result of connected activities does not make them part of the same

_____

(. . . continued)
control over the drugs, or knowing ingestion of the drugs." *State v. Mattson*, 2005 S.D. 71, ¶ 57, 698 N.W.2d 538, 555. Roedder has not asked us to revisit our decision in *Mattson*.

transaction. *See Anderson*, 2005 S.D. 22, ¶ 35, 693 N.W.2d at 684 (explaining that related conduct does not make separate offenses part of the same transaction).

[¶21.]    The record relating to Roedder's 2011 Brown County convictions establishes four separate criminal acts. During the 2011 change of plea hearing, Roedder agreed that he knowingly possessed one-half of a gram of methamphetamine, establishing the offense of unauthorized possession of a controlled substance. Roedder also acknowledged a second criminal act in which he possessed a larger quantity of methamphetamine, five-and-one-half ounces, for the purpose of distributing it. This conduct supported his conviction for possession with the intent to distribute a controlled substance. In a third criminal act, Roedder distributed a personal-use quantity of methamphetamine to another individual, providing support for one of his convictions for distribution of a controlled substance. Roedder's final criminal act relating to the 2011 convictions came when he distributed an additional, larger quantity of methamphetamine to the same individual to facilitate her retail distribution. This conduct supported a second conviction for distribution of a controlled substance.

[¶22.]    Roedder argues the failure of the State to produce additional evidence relating to his 2011 convictions precludes their use for enhancement.[4] This argument suggests that because his convictions arose out of a single arrest, they were necessarily part of the same transaction—especially in the absence of a carefully constructed sequence of events establishing otherwise. However, this view

---

4.    The State has not argued that Roedder waived any argument to the enhancement by admitting to the allegations contained in the amended part II information.

overlooks our decisions that recognize multiple convictions arising out of events occurring during a single incident can, in fact, be separate transactions. *See Anderson*, 2005 S.D. 22, ¶¶ 34-35, 693 N.W.2d at 684 (defendant who distributed drugs one time to an undercover officer but collected payment on successive days committed separate acts); *State v. Vatne,* 2003 S.D. 31, ¶ 21, 659 N.W.2d 380, 385 (providing two women with methamphetamine twice during the course of an evening was four separate transactions for sentence enhancement under SDCL 22-42-2); *Sieler*, 1996 S.D. 114, ¶ 17-19, 554 N.W.2d 477, 482. In this regard, we have held "[t]he same transaction test is valid only when transaction means a single act." *Id.*, 1996 S.D. 114, ¶ 18, 554 N.W.2d at 482. Here, there were four free-standing criminal acts which the parties and the circuit court presiding over the 2011 case treated as separate and distinct.

[¶23.] Indeed, during his March 3, 2011, sentencing hearing, Roedder asked that the convictions be effectively consolidated and considered one transaction for purposes of his initial sentencing. The sentencing court, however, rejected the request, advising Roedder, "[y]our plea agreement was that you would plead guilty to four crimes and that you would be found guilty of four crimes, and you will be sentenced on four crimes." The court continued:

> [I]f you don't think you could be validly convicted of four individual crimes because it was all one occurrence, you should not plead guilty. Because by pleading guilty, you are accepting responsibility for the four different crimes . . . if you thought in your mind today as a legal matter that you could not be convicted of those four separate crimes as a result of what you did that day, by pleading guilty and having me going forward with your sentencing today, you don't get to argue about it anymore do you understand that?

Roedder acknowledged the court's determination of the separate nature of his offenses, and nevertheless proceeded with sentencing on each of the four charges.

[¶24.]    Roedder's additional argument that the prior Brown County convictions cannot be considered separate transactions because they were not entered as separate judgments as required by SDCL 23A-27-4 (Rule 32(b)(1)) is also unsustainable.  Roedder raises this argument for the first time in his reply brief, and it is not properly presented in this appeal.  *See Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer." (quoting *Agee v. Agee*, 1996 S.D. 85, ¶ 21 n.4, 551 N.W.2d 804, 807 n.4)).  Beyond this, though, we have recognized that non-compliance with SDCL 23A-27-4 (Rule 32 (b)(1)) does not, itself, provide conclusive proof of separate transactions.  *See State v. Puthoff*, 1997 S.D. 83, ¶ 6 n.3, 566 N.W.2d 439, 442 n.3 (including multiple convictions in a single judgment was harmless error and did not prevent a determination that they were separate transactions for determining parole eligibility).  Here, the record demonstrates that Roedder's 2011 Brown County convictions were, in fact, separate transactions, and he acknowledged as much to the sentencing court.

[¶25.]    We, therefore, conclude the four 2011 Brown County convictions were properly considered by the circuit court in determining Roedder's enhanced sentence.

### b. The Arizona conspiracy conviction.

[¶26.] A further restriction upon the use of prior felony convictions to enhance a sentence prevents the use of an out-of-state conviction which would not be a felony "under the laws of this state or under the laws of the United States at the time of conviction of such prior offense." SDCL 22-7-7. We have held that "[a] crime committed in another state may be considered a felony in South Dakota for the purposes of enhancing punishment only 'if the minimal elements of the prior crime are substantially similar to the minimum elements of a crime in this state.'" *Petrilli v. Leapley*, 491 N.W.2d 79, 83 (S.D. 1992) (quoting *State v. Clothier*, 391 N.W.2d 197, 198 (S.D. 1986)).

[¶27.] Here, the Arizona and South Dakota statutes for conspiracy are substantially similar, and we conclude that Roedder's Arizona conviction for conspiracy to commit armed robbery would constitute a felony under South Dakota law.[5] South Dakota's conspiracy statute at the time of Roedder's Arizona conviction provided:

> If two or more persons conspire, either to commit any offense against the state of South Dakota, or to defraud the State of South Dakota, or any country, township, school district or municipal corporation in any manner or for any purpose, and one or more of the parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be guilty[.]

---

5. Roedder acknowledges the South Dakota and Arizona robbery statutes are substantially similar.

SDCL 22-3-8.[6]  Arizona's conspiracy statute provides:

> A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense, except that an overt act shall not be required if the object of the conspiracy was to commit any felony upon the person of another, or to commit an offense under § 13-1508 or 13-1704.

Ariz. Rev. Stat. Ann. § 13-1003.

[¶28.] Roedder contrasts these statutes and finds comfort in what he alleges is the presence of an essential element in the South Dakota statute that is missing in the Arizona conspiracy law.  In Roedder's view, the text of Ariz. Rev. Stat. Ann. § 13-1003 that removes the requirement to establish an overt act in furtherance of the conspiracy for offenses committed "upon the person of another" means that his conviction for conspiracy to commit armed robbery did not require an overt act—an element that would unquestionably be required under South Dakota law.  This view, however, is not supported by the decisions of Arizona's appellate courts.[7]

[¶29.] For example, in *State v. Stanley*, 597 P.2d 998 (Ariz. Ct. App. 1979), the Arizona Court of Appeals held that, "[a] conspiracy to commit armed robbery does not exist unless there is an agreement between two or more persons to commit armed robbery, *and an overt action is taken in furtherance of the agreement.*"  *Id.*

---

6. The Legislature amended SDCL 22-3-8 to its current form in 2005, but we consider the version in effect in 2000 pursuant to SDCL 22-7-7 which requires us to examine South Dakota's conspiracy statute as it was "at the time of conviction of [the Arizona] offense."

7. Though this issue is squarely presented here, the parties have not cited any Arizona appellate decisions.

at 1007 (citing Ariz. Rev. Stat. § 13-332) (emphasis added); *see also State v. Estrada,* 550 P.2d 1080, 1081-82 (Ariz. Ct. App. 1976) (the elements of conspiracy to commit armed robbery include an overt act).[8]  The Arizona Supreme Court has also contemplated the existence of an overt act in conspiracy to commit armed robbery prosecutions.  In *State v. Avila,* 710 P.2d 440 (Ariz. 1985) (*en banc),* the Arizona Supreme Court, sitting *en banc,* held the omission of the overt act element from the conspiracy to commit armed robbery instruction was harmless given the fact the jury's guilty verdict on the substantive offense of armed robbery established the existence of an act in furtherance of the conspiracy.  *Id.* at 448.

[¶30.]     Collateral information contained in the appellate record here further supports the idea that Arizona requires proof of an overt act to sustain a conviction for conspiracy to commit armed robbery.  The indictment in Roedder's Arizona case reads, in relevant part, as follows:

> Richard Roedder, Jr. . . . did . . . conspire with Daniel Van Eeuwen and William Gregory to rob David Calik, while armed with a deadly weapon or dangerous instrument . . . .  And *in furtherance of the conspiracy the following overt act occurred: 1. Co-conspirators Daniel Van Eeuwen and William Gregory kidnapped victim in Yuma County and demanded money from him at gunpoint.*

(Emphasis added).

[¶31.]     Though the record relating to the Arizona conspiracy prosecution is not complete beyond this, it seems clear that Roedder was ultimately convicted of the

---

8.     Arizona's conspiracy statute was previously found at Ariz. Rev. Stat. § 13-332 before it was re-codified at Ariz. Rev. Stat. § 13-603 in 1977, then renumbered as § 13-1003 in 1978.  As described in *Stanley* and *Estrada,* § 13-332 contains the same provision regarding the requirement of an overt act as stated in earlier versions of the statute.

conspiracy charge following a guilty verdict. Under the circumstances, we can discern no error in the circuit court's decision to use the Arizona conviction to determine Roedder's enhanced statutory maximum sentence.

> 3. *Whether the circuit court erred when it determined Roedder was ineligible for a presumptive fully suspended penitentiary sentence.*

[¶32.] Criminal defendants convicted of class 5 or class 6 felonies who are subject to parole supervision are presumptively eligible for a fully suspended penitentiary sentence under the provisions of SDCL 22-6-11, which states in part:

> If the offender is under the supervision of the Department of Corrections, the court shall order a fully suspended penitentiary sentence . . . . The sentencing court may impose a sentence other than . . . a fully suspended penitentiary sentence if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation under this section. If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order.

[¶33.] "To depart from a [presumptive] sentence . . . the court must identify aggravating factors that pose a significant risk to the public." *State v. Whitfield*, 2015 S.D. 17, ¶ 23, 862 N.W.2d 133, 140. What constitutes aggravating factors is not defined by statute, but we have held that "only circumstances that 'pose a significant risk to the public *and* require a departure from [a] presumptive [sentence]' can justify imposing a sentence other than [the presumptive sentence]." *Underwood*, 2017 S.D. 3, ¶ 7, 890 N.W.2d at 242 (quoting SDCL 22-6-11). These circumstances are not limited to demonstrations of a risk of violence or a career of criminality. *Id.* ¶ 8, 890 N.W.2d at 242.

[¶34.]    Here, Roedder was on parole at the time he was convicted in this case, but the circuit court did not sentence him to a fully suspended penitentiary sentence. Roedder argues the court incorrectly determined SDCL 22-6-11 did not apply and sentenced him as though he had actually been convicted of a class C felony–rather than a class 5 felony. We agree the court erred in this determination.

[¶35.]    In its sentencing analysis, the circuit court stated that Roedder's conviction would ordinarily be eligible for a presumptive sentence "as a class 5 felony . . . [b]ut as a class C felony, it would not." This statement indicates the court viewed the sentencing enhancement under the part II information as a means of increasing both the statutory maximum sentence and the grade of the offense. This conclusion, however, is contrary to our holding in *State v. Flowers*, 2016 S.D. 63, 885 N.W.2d 783. In *Flowers*, we held that "South Dakota's habitual offender statutes enhance a defendant's [statutory maximum] sentence, not the underlying offense." *Id.* ¶ 7, 885 N.W.2d at 785. Although the statutory maximum sentence for the class 5 felony at issue in *Flowers* was subject to enhancement by virtue of a habitual offender information, it remained a class 5 felony, and the provisions of SDCL 22-6-11 applied. *Id.*

[¶36.]    We have examined the sentencing record further and believe it lacks a sufficient statement of aggravating circumstances that would justify a departure from a presumptive sentence. During the sentencing hearing, the court commented generally on recidivism, mentioned the prior leniency Roedder obtained through a post-conviction sentencing reduction following his 2011 convictions, and referred to the traditional sentencing factor concerning "the protection of society from

continued violations of the law." Though topics such as criminal history and public safety are among the factors that can be relevant to a sentencing court's decision to depart from a presumptive sentence, the court's statements here are inadequate to constitute a finding that "aggravating circumstances exist that pose a significant risk to the public."

[¶37.] The fact that the circuit court later accepted the prosecutor's statement of aggravating factors does not change the analysis. The exchange came at the end of the sentencing hearing:

> **[THE PROSECUTOR]:** One other thing, Your Honor. In cases like this, even with a habitual offender, the State lists aggravating circumstances in the judgment of conviction. I just want to make sure that I can list the proper ones. The State intends on listing the repeated offenses of the same nature, the defendant's extensive criminal history, the fact that he committed these crimes while on parole, the fact that he has a conviction for a crime of violence, and the fact that he committed this crime shortly after being released from prison.
>
> **[THE COURT]:** Well, I think those coincide with what the [c]ourt was trying to say here in sentencing, that those are certainly factors that the [c]ourt has considered.

[¶38.] Read in the context of the entire sentencing record, the prosecutor's effort to list aggravating factors in an apparent effort to satisfy SDCL 22-6-11 was more a recapitulation of the State's sentencing argument, not the circuit court's stated analysis. Under the clear and unambiguous provisions of SDCL 22-6-11, the sentencing court, not the prosecutor, must state on the record the aggravating circumstances which impact public safety as a predicate to departing from a presumptive sentence and include those factors in the written judgment.

[¶39.] In this regard, Roedder's case differs from our decisions in *Whitfield* and *State v. Beckwith*, 2015 S.D. 76, 871 N.W.2d 57. In both of these cases, the

sentencing courts provided statements of aggravating circumstances on the record but simply failed to restate them in the "dispositional order." *See Whitfield*, 2015 S.D. 17, ¶ 20, 862 N.W.2d at 140; *Beckwith*, 2015 S.D. 76, ¶ 18, 871 N.W.2d at 61-62. In each case, we determined the aggravating circumstances described in the sentencing transcript were sufficient to justify departure from a presumptive sentence but remanded for the sole purpose of issuing a new judgment and sentence setting out the court's statement of aggravating circumstances.

[¶40.] Here, we are confronted with the opposite situation--the judgment and sentence contains a purported statement of aggravating circumstances, but it was not provided by the sentencing court on the record. Viewed in this way, Roedder's case more closely resembles the circumstances in *Flowers* where the sentencing court overlooked the applicability of SDCL 22-6-11 altogether.

[¶41.] Therefore, Roedder's sentence must be vacated and the case remanded to the circuit court for resentencing. The parties are free to develop the sentencing record by presenting aggravating or mitigating information or making sentencing arguments.

[¶42.] In order to foreclose its consideration on remand, we also consider Roedder's additional argument that the text of SDCL 22-6-11 mandates, in all cases, a fully suspended penitentiary sentence for those who are on parole at the time they commit a qualifying class 5 or class 6 felony. Roedder's textual argument parses the provisions of SDCL 22-6-11 and isolates the last part of the statute's third sentence, noting that the court's findings to justify a departure from a presumptive sentence refer only to "a departure from presumptive probation"

without mentioning a presumptive fully-suspended penitentiary sentence. The absence of the parallel reference Roedder suggests is, in our view, not consequential because it overlooks SDCL 22-6-11's preceding text expressly authorizing a sentencing court to "impose a sentence other than probation *or a fully suspended penitentiary sentence*[.]" (Emphasis added). Accepting Roedder's argument would strip the sentence of its principal purpose and be at odds with the well-settled rule of statutory construction that obligates us to, wherever possible, "give effect to all [of a statute's] provisions." *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164.

## Conclusion

[¶43.] Roedder's guilty plea for violating SDCL 22-42-5 is supported by a factual basis and is affirmed, and the circuit court correctly determined Roedder's sentence could be enhanced to the statutory maximum sentence for a class C felony. However, the court erred when it concluded Roedder was ineligible for consideration of a presumptive sentence under SDCL 22-6-11. Therefore, we vacate Roedder's sentence and remand the case to the circuit court for resentencing. In light of our remand, it is premature to consider whether Roedder's sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment.

[¶44.] We affirm in part, reverse in part, and remand.

[¶45.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, concur.