#30013-r-JMK
**2024 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

MATTHEW T. FEUCHT,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH III
Retired Judge

* * * *

MANUEL J. DE CASTRO, JR.
Sioux Falls, South Dakota                 Attorney for defendant
                                          and appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 21, 2023
REASSIGNED JULY 21, 2023
OPINION FILED **04/03/24**

#30013

KERN, Justice (on reassignment).

[¶1.] Matthew Feucht pled guilty to possession of a controlled substance, and the circuit court sentenced him to nine years in the penitentiary with four suspended. Feucht appeals, asserting the circuit court erred in imposing a penitentiary sentence without finding aggravating circumstances within the meaning of SDCL 22-6-11 and further erred by not listing the aggravating circumstances in the judgment of conviction. We reverse and remand.

## Factual and Procedural Background

[¶2.] On January 23, 2021, Feucht was at his home in Hudson, South Dakota, with his son and sixteen-year-old daughter, A.F., when A.F. found bags of marijuana in a box in a closet in the home.[1] A.F. texted her mother, Feucht's ex-wife, photographs she had taken of the marijuana in the box and of a glass pipe she later found. In one picture, the butt of a gun was visible. The mother called dispatch, requesting to speak to an officer about her children being in the home with Feucht. Deputy Leah Stroschein spoke with the mother and then called A.F. Because A.F. could not talk at the time, Deputy Stroschein sent her a text message asking her what she had located in the house. In response, A.F. sent the deputy a text containing the pictures she had sent her mother. Using the information provided, Deputy Stroschein applied for a search warrant for Feucht's home.

---

1. The factual background for this case comes from the information contained in the presentence investigation report (PSI), including attached law enforcement reports. Feucht did not object to any of the information in the PSI and had previously consented to the circuit court using the law enforcement reports to find a factual basis for his guilty plea.

[¶3.] Deputy Stroschein's report states that while she was waiting for the warrant, A.F. texted her: "He found out"; "He[']s mad"; "He[']s hiding the box"; "He[']s going to be livid"; "He[']s pisse[d]." Although, at the time, it was unclear who tipped off Feucht, law enforcement later learned that the dispatcher was Feucht's uncle, who told Feucht about the call and suggested Feucht get rid of the drugs.[2]

[¶4.] Deputy Stroschein's report also noted that A.F. called her because Feucht was leaving the house with the box of marijuana. A.F. told the deputy that she did not know where Feucht was going. A.F. also told Deputy Stroschein that she would be hiding under the deck of the residence because she was scared of Feucht. A.F. then hung up and texted Deputy Stroschein that Feucht had returned and was moving other items, including a box, to his vehicle. Around this same time, officers arrived at the home to execute the search warrant and Feucht was placed in the back of a patrol vehicle.

[¶5.] During the search, the officers recovered firearms, ammunition, drug paraphernalia, and approximately $6,800 in small bills. Deputy Stroschein discovered what she believed to be an old marijuana growing operation in Feucht's basement based on the presence of several fluorescent lights, jugs of PH balance liquid, and an additional electrical panel. While still at the home, law enforcement obtained a warrant to search Feucht's vehicle and found several illegal substances, including THC wax and mushrooms. Feucht was placed under arrest.

---

2. The dispatcher's conduct was reported to and investigated by the South Dakota Division of Criminal Investigation.

[¶6.]     Officers eventually learned from A.F. that Feucht might have taken the box of marijuana to his friend's house in Hawarden, Iowa. Officers relayed this information to the Hawarden Police Department, and a search warrant was executed on the friend's home on January 28, 2021. The search recovered sixteen pounds of marijuana in a box consistent with the one in the photograph taken by A.F. and over nine ounces of psilocybin mushrooms.

[¶7.]     On February 1, 2021, Feucht's phone was seized pursuant to a warrant. The search revealed photographs of drugs and text messages between Feucht and others using drug slang and coordinating times to come to Feucht's property. Law enforcement determined that multiple phone numbers found in Feucht's contacts belonged to people with prior drug arrests.

[¶8.]     Feucht was indicted by a Lincoln County grand jury on February 17, 2021, for thirteen misdemeanor and felony counts including: two counts of possession with intent to manufacture, distribute, or dispense a controlled substance; distribution or possession with intent to distribute marijuana; felony possession of marijuana; two counts of abuse or cruelty to a minor age seven or above; tampering with a witness; two counts of keeping a place for sale or use of a controlled drug or substance; two counts of unauthorized possession of a controlled substance; possession of a firearm by one with a prior drug conviction; and simple assault, domestic. The State filed a part II information, alleging that Feucht had two prior felonies. Feucht pled not guilty and denied that he was a habitual offender.

[¶9.]		On January 7, 2022, the circuit court held a change of plea hearing. Counsel for Feucht related that under the terms of the agreement, Feucht would plead guilty to unauthorized possession of a controlled substance in violation of SDCL 22-42-5 and admit to the part II information. In exchange, the State would dismiss the remaining twelve charges. Under the terms of the agreement, both Feucht and the State were free to make sentencing recommendations. The circuit court confirmed the terms of the plea agreement with Feucht and his understanding that, based on the plea agreement and his admission to the part II information, the sentence for the offense would be enhanced from that imposed for a Class 5 felony to a Class 4 felony, which carries a maximum penalty of ten years in prison, a $20,000 fine, or both.

[¶10.]		The court accepted Feucht's guilty plea, determining that it was voluntary, knowing, and intelligent. The court indicated that, with Feucht's consent, it would use the police reports, test results from the investigation, and grand jury testimony as the factual basis for the plea. Prior to the conclusion of the hearing, during a discussion about Feucht's bond status pending sentencing, defense counsel reminded the circuit court that "this is a presumptive probation case[,]" to which the circuit court responded, "Yeah, I know." The circuit court ordered a PSI and scheduled a sentencing hearing.

[¶11.]		At the sentencing hearing on February 18, 2022, the State requested a ten-year penitentiary sentence based on the circumstances surrounding the offense and Feucht's criminal history, which included a third-degree burglary conviction and multiple convictions for possession of a controlled substance. The State also

asserted that Feucht was a drug dealer who "would stop at nothing to get rid of this evidence . . . even at the cost of his daughter."

[¶12.]      Feucht's counsel requested that the court "consider some type of probationary sentence[.]" Counsel acknowledged that Feucht has a criminal history; however, he noted that the last conviction was in 2012 for an incident Feucht indicated had occurred in 2009. Counsel also stressed that Feucht did not have any violations while on parole for that offense and had done what was required of him while out on bond pending sentencing. Counsel therefore argued that Feucht could "succeed on any probationary sentence[.]"

[¶13.]      The circuit court began the imposition of its oral sentence by speaking personally with Feucht. During that discussion, the court asked whether Feucht had read the letters written on his behalf, highlighting the letter from Feucht's mother. The court also indicated that it did not believe Feucht was evil and that he has an opportunity for redemption. Before continuing, however, the court told Feucht that he would be imposing a penitentiary sentence stating:

> And you might have good in your heart, but you've still got stinkin' thinkin in your head and that means that you're going to, before you can, in my view, become a truly good person and be ready for redemption if it will, that your head and your heart have to get together. That means accepting responsibility. Accepting blame. Expect - - accepting your agency and the circumstances you find yourself in.
>
> Now, I believe you when you say that you did not threaten your kids. Now, under the circumstances you can certainly see how either your daughter or your son might have thought you were threatening them, pretty tough day, right. Getting rid of all that stuff. Got the kids there. Cops coming, da da da da, but I believe you. I believe you. That's not really exactly everything that's going on here. We're - - what's going on here to me is how when I read all those letters, and I see those various good things

you've done, and the people that have seen the good things that you have done, and this is what comes back to me time after time, after time, after time. People who commit crimes a lot of times they don't begin to consider the ripple effect. The wave effect. The tidal wave effect that they have on other people's lives. You in a way punish people, the people around you way more than I can ever punish you.

Take your mom. She's behind you all the way. She could use some help, couldn't she now?

[Feucht replied, "Yes."]

. . .

Sure she's not going to have that. Why did that happen? You. Were you thinking about that when you're putting all this stuff together, and you know this isn't a crime that happened like that. It takes a little while to put together an operation that you had and who knows how long it was going on. I don't frankly care.

Your kids. Could they use their old man? Could they know their old man despite all his faults is behind them in a pretty tough time. You bet.

Why is that not going to happen, at least conveniently, you. Call, the call you made. Your dogs. All these various things that you did. You at some point in time and maybe for the, for your whole life, I don't know. You're thirty-eight years old. You haven't seemed to get it yet. Decided that making some money off pot, mushrooms, wax, was worth the risk. You made that call.

Who's paying the most? I think me, personally, I think probably it's your kids. Your ma. Your friends. Your dogs. Okay. So, that's the bad.

Here's the good. I believe in redemption. I believe in it. I believe that you can redeem yourself. . . . Now, you have to buck up and you have to do your Pen time. You're going to get out. You're going to be on parole. People are already going to think that, . . . Matt Feucht, he's a . . . drug dealer. He went to the Pen twice. Three times, whatever it is, but if you have that grain of good, if you have and you're willing to grow that grain, and you're willing to accept some responsibility, get away a little

> bit of this stinking thinking that you've got . . . [the court does not] . . . have any reason to think that you can't be a productive citizen . . . [and] . . . come back in to your kids' lives and be a positive force.

Ultimately, the court sentenced Feucht to nine years in the penitentiary with four years suspended and credit for time served. Feucht appeals.

## Analysis and Decision

[¶14.] Feucht notes that the crime for which he pled guilty is a Class 5 felony that requires a probationary sentence unless the circuit court finds that aggravating circumstances exist that pose a significant risk to the public and require departure from presumptive probation. He then claims that the circuit court erred in sentencing him to prison because the court did not, at the sentencing hearing, find the presence of aggravating circumstances that pose a significant risk to the public and did not list the aggravating circumstances in its judgment of conviction. In Feucht's view, the circumstances of his case are "almost identical" to those in *State v. Flowers*, wherein this Court remanded for resentencing because the circuit court did not mention probation, aggravating circumstances, or departing from probation, and the written judgment of conviction did not list aggravating circumstances. 2016 S.D. 63, 885 N.W.2d 783.

[¶15.] In response, the State claims that Feucht failed to preserve this argument for appellate review because he did not raise below the question of whether the circuit court complied with SDCL 22-6-11.[3] According to the State, if

---

3. The State further contends that Feucht waived the issue on appeal by omitting in his appellate brief, as required by SDCL 15-26A-60(4), a "concise statement" of how the circuit court decided the legal issue being challenged
(continued . . .)

Feucht thought the circuit court "did not treat the case as a presumptive probation case pursuant to SDCL 22-6-11"; "did not find aggravating circumstances on the record at sentencing"; and "did not include aggravating circumstances in the dispositional order[,]" he "had ample opportunity to raise . . . the issue at sentencing and could have filed a motion to amend the judgment to correct the clerical errors." The State then directs this Court to our past cases declining to review on appeal an issue not first brought to the attention of the circuit court. *See, e.g., State v. Podzimek*, 2019 S.D. 43, ¶ 27, 932 N.W.2d 141, 149 (declining to address claim that subpoenas were deficient because the issue was not raised below); *State v. Wright*, 2009 S.D. 51, ¶ 68, 768 N.W.2d 512, 534 (recognizing that even fundamental rights "may be deemed waived if . . . raised for the first time on appeal" (citation omitted)).

[¶16.]     In his reply brief, Feucht asserts that he did not need to take action to preserve this type of error for appeal. As support, he directs this Court to the absence of language in our past cases indicating that defendants had objected below or that they were required to first raise the issue to the circuit court before being permitted to assert on appeal that the court failed to comply with mandates in

---

(. . . continued)

> on appeal. On the contrary, Feucht complied with SDCL 15-26A-60(4). Under that rule of appellate procedure, Feucht was required to include in his brief "[a] concise statement of the legal issue or issues involved . . . followed by a concise statement of how the trial court decided it[.]" Here, Feucht identifies the legal issue involved as whether the circuit court complied with SDCL 22-6-11 at the sentencing hearing and argues that the court sentenced him to the penitentiary without identifying aggravating circumstances at the time of sentencing or listing those circumstances in the judgment of conviction.

SDCL 22-6-11. *See, e.g., Flowers,* 2016 S.D. 63, 885 N.W.2d 783; *State v. Beckwith,* 2015 S.D. 76, 871 N.W.2d 57.

[¶17.] While Feucht's assessment of what is not contained in this Court's past cases is correct, we do not regard this, in and of itself, as precedential. A review of these cases reveals that we were not asked to examine whether the defendant was required to raise this issue below to preserve it for appeal. We are now squarely confronted with that question and thus examine whether an error related to the circuit court's noncompliance with SDCL 22-6-11 must be preserved for appeal by first raising the issue to the circuit court.

***Whether SDCL 22-6-11 Error Must Be Preserved***

[¶18.] As this Court recognized in *State v. Hernandez,* SDCL 22-6-11 was enacted in 2013 as part of Senate Bill 70 (The Public Safety Improvement Act), and it imposed new sentencing requirements on circuit courts for offenders convicted of certain offenses. 2014 S.D. 16, ¶ 11, 845 N.W.2d 21, 22. While a circuit court's failure to comply with SDCL 22-6-11 initially resulted in multiple appeals to this Court,[4] it is now well known that defendants convicted of qualifying offenses are entitled to probation unless the circuit court finds aggravating circumstances that pose a significant risk to the public and require departure from probation. It is also

---

4. After *Hernandez,* this Court issued multiple opinions concerning SDCL 22-6-11, including five decisions in 2015 alone. *State v. Moran,* 2015 S.D. 14, 862 N.W.2d 107; *State v. Whitefield,* 2015 S.D. 17, 862 N.W.2d 133; *State v. Anderson,* 2015 S.D. 60, 867 N.W.2d 718; *Beckwith,* 2015 S.D. 76, 871 N.W.2d 57; *State v. Orr,* 2015 S.D. 89, 871 N.W.2d 834. Since 2015, we have only issued four decisions related to SDCL 22-6-11. *Flowers,* 2016 S.D. 63, 885 N.W.2d 783; *State v. Underwood,* 2017 S.D. 3, 890 N.W.2d 240; *State v. Krause,* 2017 S.D. 16, 894 N.W.2d 382; *State v. Roedder,* 2019 S.D. 9, 923 N.W.2d 537.

well known that when a circuit court departs from presumptive probation, the court must state the aggravating circumstances on the record and include them in the dispositional order.  Finally, our past decisions have made it clear that strict compliance with the provisions of SDCL 22-6-11 is necessary.

[¶19.]        For example, in one of our earliest cases examining SDCL 22-6-11, we rejected the State's argument that the doctrine of substantial compliance could apply when a circuit court stated the aggravating circumstances on the record but then failed to include them in the judgment of conviction.  *State v. Whitefield*, 2015 S.D. 17, ¶ 18, 862 N.W.2d 133, 139.  However, because the error was merely clerical, we remanded for the circuit court to issue an amended judgment of conviction that complied with SDCL 22-6-11.  *Id.*; *see also Beckwith*, 2015 S.D. 76, ¶ 18, 871 N.W.2d at 61–62 ("The court's failure to restate the . . . aggravating circumstances in the written judgment was only a clerical error.").

[¶20.]        More recently, we declined to construe a circuit court's acceptance of the prosecutor's statement of aggravating circumstances at the sentencing hearing as compliance with SDCL 22-6-11, even though the circuit court listed the aggravating circumstances in the judgment of conviction.  *State v. Roedder*, 2019 S.D. 9, ¶ 38, 923 N.W.2d 537, 548.  The Court explained that "the sentencing court, not the prosecutor, must state on the record the aggravating circumstances which impact public safety as a predicate to departing from a presumptive sentence and include those factors in the written judgment."  *Id.*  We then vacated the defendant's sentence and remanded for a new sentencing hearing, *id.* ¶ 41, 923 N.W.2d at 549, because the court's statements at sentencing were "inadequate to

constitute a finding that 'aggravating circumstances exist that pose a significant risk to the public[,]'" *id.* ¶ 36, 923 N.W.2d at 548. However, this precedent does not stand for the proposition that any deviation from the requirements of SDCL 22-6-11 constitutes reversible error *regardless* of a party's failure to raise the alleged error to the circuit court. Although the Legislature imposed a burden on circuit courts to comply with SDCL 22-6-11, this does not perforce mean that parties are excused of their duty to raise alleged errors first to the circuit court to preserve error for review on appeal.

[¶21.] In fact, in *State v. Nelson*, this Court specifically applied plain error review when, like here, the circuit court failed to comply with mandatory statutory directives, albeit ones related to the reading of jury instructions and the dismissing of an alternate juror, and the defendant did not raise the issue to the circuit court. 1998 S.D. 124, 587 N.W.2d 439. In that regard, the Court in *Nelson* stated that an objection is necessary when a court "materially deviates from the statutory procedures it is bound to uniformly and fairly administer[.]" 1998 S.D. 124, ¶ 13, 587 N.W.2d at 444. To conclude otherwise runs counter to the well-established rule that "[t]o preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons." *Id.* ¶ 7, 587 N.W.2d at 443. Indeed, there are compelling reasons for requiring parties to first raise alleged errors related to SDCL 22-6-11 to the circuit court.

[¶22.] First, these types of errors—failure to state aggravating circumstances on the record at sentencing or failure to include them in the judgment of

conviction—relate to sentencing procedure, not to whether the circuit court abused

its discretion in imposing a penitentiary sentence under the circumstances before

the court. *See, e.g., Beckwith*, 2015 S.D. 76, ¶ 7, 871 N.W.2d at 59 (explaining that

"[w]e apply the abuse of discretion standard in reviewing a sentencing court's

decision to depart from presumptive probation"). Therefore, requiring an objection

*at the time the error occurs* aligns with the purpose of our rule that parties must

raise issues first to the circuit court to give "the circuit court . . . an opportunity to

correct any error." *State v. McCrary*, 2004 S.D. 18, ¶ 15, 676 N.W.2d 116, 121.

[¶23.]        Second, objecting at the time the circuit court fails to identify on the

record the aggravating circumstances warranting a deviation from presumptive

probation as required under SDCL 22-6-11 promotes judicial efficiency. It is neither

efficient nor a prudent use of judicial resources to allow a party to remain silent

when fully aware that the circuit court has failed to comply with SDCL 22-6-11—

whether at sentencing or in entering the written judgment of conviction.[5] The

circuit court, not this Court, is in the best position to correct a failure to state

aggravating circumstances when pronouncing sentence, and an objection at the

---

5.    It is less likely that the State will be the party appealing a circuit court's
      error related to pronouncing a sentence under SDCL 22-6-11. However, the
      State surely has an interest in ensuring the circuit court complies with SDCL
      22-6-11 and should alert the circuit court during sentencing when it appears
      that the statute has not been complied with. Moreover, because the State
      traditionally prepares the judgment of conviction for the circuit court's
      signature, it is uniquely positioned to ensure that the aggravating
      circumstances stated on the record are included in the judgment of
      conviction. Also, in those cases where the aggravating circumstances are not
      stated on the record or included in the judgment of conviction, such an error
      would likewise be obvious to the State and defendant.

time the error occurs serves to remind the circuit court of its obligations under

SDCL 22-6-11 and gives the court the ability to immediately correct its error.

[¶24.] For these reasons, we conclude that when a circuit court fails to comply

with the procedural requirements of SDCL 22-6-11, parties must first raise the

issue to the circuit court to preserve the error for appeal and avoid plain error

review. *See Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d at 443; *see also State v. Wilson*,

2020 S.D. 41, ¶ 17, 947 N.W.2d 131, 136 ("Where an issue has not been preserved by

objection at trial, our review is limited to whether the trial court committed plain

error." (quoting *State v. Thomas*, 2011 S.D. 15, ¶ 20, 796 N.W.2d 706, 713)).

[¶25.] However, it is well settled that this Court has the inherent power to

apply our decisions prospectively or retrospectively. *See Hohm v. City of Rapid*

*City*, 2008 S.D. 65, ¶ 21, 753 N.W.2d 895, 906; *City of Rapid City v. State*, 279

N.W.2d 165, 166 (S.D. 1979). In this Court's past decisions involving alleged

failures to comply with SDCL 22-6-11, we have not applied the plain error standard

despite the lack of an indication in the record that the issue had been raised below.

Thus, defendants like Feucht have not been warned that they must object below to

avoid having the issue reviewed on appeal under the plain error standard. *See*

*United States v. Flores-Mejia*, 759 F.3d 253, 258–59 n.7 (3d Cir. 2014) (en banc) (not

reviewing alleged procedural sentencing error for plain error "[b]ecause defendants

sentenced before the issuance of this opinion had not been warned that they had a

duty to object" after the sentence is pronounced). Nevertheless, going forward,

alleged procedural errors regarding the application of SDCL 22-6-11 that were not

first brought to the attention of the sentencing court will be reviewed only for plain error.

*Compliance with SDCL 22-6-11*

[¶26.] On the question whether the circuit court complied with SDCL 22-6-11 here, the State concedes that the circuit court erred in regard to its obligation to state aggravating circumstances in the judgment of conviction and agrees that remand is necessary for the court to issue an amended judgment. However, the State asserts that Feucht is not entitled to a new sentencing hearing because, in its view, the circuit court knew Feucht was eligible for presumptive probation and stated the required aggravating circumstances on the record at the sentencing hearing. As support, the State relies on the circuit court's acknowledgement at the change of plea hearing that the charged offense to which Feucht pled guilty was a presumptive probation offense.

[¶27.] The State then points to the following matters discussed by the court at the sentencing hearing: Feucht's large-scale drug dealing operation, his criminal history and prior penitentiary sentences; his "stinkin' thinkin"; his actions having a "tidal wave effect . . . on other people's lives"; his daughter feeling threatened; and the fact that he devoted his time to crimes when he could have been spending it with his children or helping his mother. In the State's view, these statements made by the circuit court are sufficient to support a departure from presumptive probation because they show Feucht's criminal mindset, his negative behaviors that are harmful to others, his failure to accept responsibility, and his continued

criminal activity. But in the context of SDCL 22-6-11, we have previously required greater clarity in the sentencing record.

[¶28.] This Court has observed that SDCL 22-6-11 requires circuit courts "to sentence defendants convicted of certain Class 5 and 6 felonies (including possession of a controlled substance) to probation unless 'the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation.'" *Flowers*, 2016 S.D. 63, ¶ 6, 885 N.W.2d at 784 (quoting SDCL 22-6-11). In this regard, when we have not been able to discern from the sentencing record whether the circuit court was in fact applying the statutory requirements in SDCL 22-6-11 when imposing sentence, we have remanded for a new sentencing hearing. *Roedder*, 2019 S.D. 9, ¶ 36, 923 N.W.2d at 548 (concluding also that the court incorrectly determined that SDCL 22-6-11 did not apply). Similarly, in *Flowers*, we remanded for a new sentencing hearing, noting that the circuit court "did not mention probation, a departure from presumptive probation, or aggravating circumstances warranting a departure from probation." 2016 S.D. 63, ¶ 4, 885 N.W.2d at 784.

[¶29.] Here, although the circuit court did not indicate that SDCL 22-6-11 was inapplicable (as did the circuit courts in *Roedder* and *Flowers*), it is not apparent from our review of Feucht's sentencing transcript that the circuit court applied SDCL 22-6-11 when it imposed a penitentiary sentence instead of probation. This is not to say that circuit courts are required to use "magic language" to comply with SDCL 22-6-11. But the statute mandates that defendants convicted of certain low-level felonies receive a sentence of presumptive probation

*unless* "the court finds aggravating circumstances exist that pose a significant risk to the public[.]" *State v. Whitfield*, 2015 S.D. 17, ¶ 19, 862 N.W.2d 133, 140 (alteration in original).

[¶30.]     Although the circuit court noted circumstances that have been determined, in this Court's prior cases, to constitute aggravating circumstances posing a significant risk to the public, the question is not whether the court *could* have made such a finding, but whether the court actually found aggravating circumstances that pose a significant risk to the public.  The court's colloquy seemed to focus on giving Feucht reasons why he is capable of redemption and why he should change his life's course and be the father, son, and friend that the letters of support indicated he had the potential to be.  The record also presented mitigating factors including that Feucht had "done well on pretrial release" and did not have a positive drug urinalysis for more than a year after his arrest.  Feucht was employed, deemed reliable and skilled by his employer, and had not been "in trouble . . . for a decade, nine years prior to this, and he did well on supervision last time."

[¶31.]     Thus, despite the presence of potential aggravating factors at play, this situation is unlike our past cases where circuit courts have clearly identified on the record that they were departing from presumptive probation based on the existence of aggravating circumstances posing a significant risk to the public.  *See Whitfield*, 2015 S.D. 17, ¶ 20, 862 N.W.2d at 140 (the court recognized that SDCL 22-6-11 applies by "identif[ying] the aggravating circumstances that pose a significant risk to the public, and stat[ing] those circumstances on the record at sentencing"); *Beckwith*, 2015 S.D. 76, ¶ 5, 871 N.W.2d at 58–59 (the court found three

aggravating circumstances warranted departing from presumptive probation); *State v. Underwood*, 2017 S.D. 3, ¶ 6, 890 N.W.2d 240, 241 (noting that "the court cited [ten] circumstances it considered to be aggravating").

[¶32.]     Because a review of the sentencing record reveals no mention of SDCL 22-6-11 by the court or of aggravating factors found by the circuit court that pose a significant risk to the public requiring a departure from probation, we vacate Feucht's sentence and remand for a new sentencing hearing.  *See Roedder*, 2019 S.D. 9, ¶ 41, 923 N.W.2d at 549; *Flowers*, 2016 S.D. 63, ¶ 11, 885 N.W.2d at 786.

[¶33.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.